is United States v. Dawson, Docket 22-8064. Council, you are ready to go. I am. I'm going to raise this a little bit. I'd like to have three minutes for rebuttal, please. Sorry, I'd like to have three minutes for rebuttal, please. It's up to you to say that. Perfect. Sometimes council doesn't, so. Well, good morning. I'm here representing Mr. Dawson, the defendant here. What we have in this case is the government is asking the court to extend to an additional circumstance some of its older precedents that were already in significant tension with the Supreme Court's 2015 decision in Rodriguez. Essentially, to justify the continued detention of Mr. Dawson, the government, the officers in the government need a rule that you are allowed to, because he is operating a rental car, that you are allowed to continue detaining him until he produces literally a rental agreement. Rodriguez doesn't commit that. I want to distinguish two. But Rodriguez does allow the officer to dispel reasonable suspicion that the officer has based on what's happened thus far. I agree with that. And so whether it be a rental agreement or confirmation email or some other document, our case law would say that the officer has a right to be sure that the person driving the car has the right to drive the car. Would you agree with that? No, Your Honor. I'm going to point out a slight shift in rhetoric in what you just said. Please do. First thing you said was reasonable suspicion. Then you said right to assure. There is no suggestion in this record that the officer had reasonable suspicion that Mr. Dawson was operating the car unlawfully. And this court's precedents would have held that simply the fact that the rental confirmation identified a different car doesn't generate reasonable suspicion. You've all rented cars, I imagine. You know that you sometimes end up with a different car and the same thing for the difference in date. Wait, wait. Now, are you saying that the fact that he's driving a 300 Chrysler black doesn't mean he's actually the rental agreement is for a Ford, that that doesn't create some kind of suspicion? Well, the confirmation my question to you, counsel, is are you saying that that does not constitute some kind of suspicion? So, first thing I'm saying is that- Can you just answer my question first? Absolutely. If I have a rental agreement that specifically identifies- Counsel- I'm trying to change my mind. Well, first you can start by saying yes or no. And then let's hear your explanation. This is going to be a yes or no, but I want to make sure I understand the question very precisely. So I'm going to- You want me to restate it to you? I was going to restate it to you, but- My question simply is that the individual here is driving a 300 Chrysler automobile that's black. The rental agreement that he produces or the document that he produces is for a Ford Mustang. Now, that doesn't create some kind of suspicion? It does not. And there's a crucial difference in what you just said as well. First you talked about the rental agreement, then you talked about the document that he produced. I think it's agreed between us and the government that what he provided during the course of the stop was not the rental agreement. It was the confirmation. Confirmations routinely, as the one in this case did, said you will be renting a car of this type or similar and it happens all the time that you go in and you get not the kind of car you reserved. So no, I don't think that generates- So you add to that the fact that he's driving the car, I think it's four days after the email says that a Mustang was supposed to be returned. That adds to the calculus here of suspicion, doesn't it? Everything in the circumstances always adds to the calculus, but I would say, Your Honor, that those two things, and there is nothing else. There is nothing else in the record that gives any reason to suspect that he's operating this car unlawfully. But the trooper doesn't need reason to suspect that he's operating the vehicle unlawfully, right? The trooper is allowed to make sure that we have this rental agreement. I want to make sure that you're authorized to drive it. Even if the trooper is 99.99, however many nines, sure that it's all on the level, the trooper can still detain the person long enough to find that without reasonable suspicion that the car is stolen or anything else, right? I would disagree with that, Your Honor. And this goes back to the change in wording that I- Well, let me make sure that I'm following what your position is, because I didn't think you were going to disagree with that. Are you saying that the trooper has to have reasonable suspicion that the car is stolen or the operator is doing so invalidly before can detain under Rodriguez? Let me read to you the key language from Rodriguez. Okay, but again, what's the answer? Is it yes or no and then read? So my answer is that obviously there's reasonable suspicion with respect to the actual traffic violation, the speeding. And that's done? That's done. That's easy? Yes. I think that under Rodriguez, if you were going to continue to detain, you need reasonable suspicion of something else. What if the criminal history hadn't come back or the driver's license hadn't come back and the trooper has already finished writing the citation, hypothetical one keeps the citation to himself, can he continue to detain until he gets word on whether the person's a valid driver? The answer is yes, right? Yeah. Okay. And- And there's a difference there that's more important as well that I'd like to get to. Okay. Well, go ahead. I don't want to interrupt you. Many state laws, and I imagine also in Wyoming, require you to bear a copy of a valid driver's license while you are driving. So if you don't have a driver's license, that in itself is a violation. And if you have a driver's license that is, it is much easier to get to reasonable suspicion of that violation than with respect to not having authorization. All this reasonable suspicion stuff is losing me because, as you say, there's reasonable suspicion probable cause that he was speeding. No one denies that. Right. And so the stop's valid. Then the question is, how long can the stop go? And what I'm trying to zero in on is, are you saying if the trooper had not handed him the citation, it still would be a prolonged stop? I want to be careful about my answer to that, because I'm not suggesting that the trooper, that the difference is a matter of seconds when you hand the citation. And certainly there's a reasonable, and this comes a time where you're allowed to have the citation in your hands. This comes back to a key, there's two axes of Rodriguez that I'd like to point out. So the first thing is it says, authority for the seizure thus ends when tasks tied to the traffic infraction, here that's speeding, tasks tied to the traffic infraction are or reasonably should have been completed. So if it's been completed and the tasks tied to that infraction, the citation are completed, the authority ends, says Rodriguez. The other question that you're asking, I think, goes to- But that's not absolute. I mean, if he's leaning in the window and he sees a bag of marijuana sitting on the passenger seat, he's finished with the traffic violation, but it's not over even under Rodriguez, right? Well, under that circumstance, he's now got reasonable suspicion of something else. Okay, so your position is traffic violation and the next step is reasonable suspicion. So let me propose a separate, a different hypothetical. Suppose that Mr. Dawson was lawfully operating his car, right? The rental agreement actually works out. He did rent the car, he's got the right to be doing it, but he just can't get a copy of it all, at all. Is the officer allowed to stop him forever? Does it ever end? Well, that's not the question, counsel. What the three of us are asking you is that number one, under the Tenth Circuit law, we've said over and over and over again that an officer is entitled to determine whether or not you're the person that has the right to drive under a rental agreement. I think you agree with that. I do not agree that this court has said it specifically needs to be a rental agreement. This court has said, sure, that you are authorized to operate. Okay, let's take your hypothetical. That's what we're trying to say, because you're parsing it, saying reasonable suspicion for speeding, issuing the ticket. I write the ticket out and I give it to you. That's the end of the basis of the reasonable suspicion for speeding. Then to go further, you're saying a new reasonable suspicion based upon the facts has to arrive. Am I saying specifically what your position is? Yes, and I would like to add one more thing based on Rodriguez, which is these questions. Well, wait a minute. Let me finish with my position, because I'm one of the ones you've got to make understand what your position is. What you're saying is that when I gave you back the ticket, even though I'm waiting for confirmation as to your right to drive, that that extends because there's not reasonable suspicion on the basis of the vehicles? Under Rodriguez, I think yes. Once that ticket is issued, and yes, this court has said that you have the right that the officer is allowed to assure himself or herself that you are authorized to operate the vehicle. I think that is inconsistent with Rodriguez. Okay, so you want us to overrule circuit precedent? I think the Supreme Court already has abrogated it, and that's to that extent. Well, in Rodriguez? And so there are no post-Rodriguez cases from our circuit? That have issued this holding that you are allowed to assure post the conclusion? We have four cases that talk about you have to have a rental agreement. We've got Fraser, we've got Katz, we've got... So Katz is, of course, post-Rodriguez. Jones, we've got... Well, but we have never done anything to say that we've changed our law on that, and you're saying that we have an intervening, superseding Supreme Court case, and that therefore we don't have to follow our precedent on this panel because of Rodriguez. That's your argument? There are actually several parts to the argument, several ways for this court to get there. That's one of them. Another one of them is this observation that the rental agreement specifically, there is a confirmation here that supports, that is evidence. It is not maybe clear and convincing evidence, right? It's not 100%. It's a confirmation for a different car, and he's 900 miles away from the return location four days after the car was due back. So, I mean, there are... It certainly doesn't solve his problem by producing that. It is not definitive proof. I agree with that. Okay. I'm really struggling to understand what you're saying. We have a speeding stop. The person acknowledges that he's speeding. He says, I was speeding because I was afraid I was going to run out of gas, which take that as well. And it's going to take the trooper how long to write a citation? Not very long. There's not that much information. Are you saying the trooper gets three minutes or so to write a citation? And if the trooper hasn't learned criminal history, if the trooper hasn't learned outstanding warrants, if the trooper hasn't learned legality of the driver driving the automobile, by the time those three minutes are up, then it's goodbye driver? Well, this comes back to the second... What's the answer though? Is that your position? I don't... My position is not a hard three minute line, certainly. Well, what is it? Is it a four minute line? It is a reasonable length of time to carry out the tasks, which is what Rodriguez says. The reasonable duration. Okay. And so, let's say it's four minutes, just for fun. It's four minutes for the trooper to be able to write out the citation and has not gotten the information back from dispatch. Is your position is the trooper has to say, goodbye driver, I can't prolong the stop any further, or can the trooper wait for that information from dispatch? And when you say hold forever, the trooper would simply impound the automobile. If I may, I'd like to reserve this last 90 seconds for a bubble, but I'd also love to answer that question. Okay. Well, let's stop the clock, allow him to answer the question, and you can reserve a minute and 21 seconds. So, I don't think that you would be able to impound the vehicle without reasonable suspicion further. And in the circumstance, can you wait to hear back, right? Can you wait to hear back the criminal history? I would say yes, because specifically with respect to the criminal history, that is part of the tasks. All right. So, it's not prolonging to wait to hear back from dispatch on that, but it is prolonging if you're waiting to get some confirmation on the rental agreement. Well, in this circumstance, of course, there's no question of prolonging. That task was done. He has issued the citation. Oh, okay. And I think Judge McHugh had a question. Yeah, while we're stopped, I have. Why aren't we bound by our 2023 decision in United States versus Cates or Katz? I don't think Cates is inconsistent with what I'm suggesting here. Well, it says that because he didn't produce a rental agreement, that they could prolong the stop. I believe in Cates, Your Honor, what had happened was, in fact, it is roughly speaking three minutes or five minutes. And the officer has taken 10 seconds to send a text message to police, let's have a dog over. The dog is sniffing around during that brief interlude. This is the opposite of that circumstance. The officer is doing the information produced. The officer has issued the citation. And then having completed, as it says, the tasks tied to the infraction, decides to continue the detention anyway. All right. Thank you. May it please the court. Good morning, Your Honors. Seth Griswold appearing on behalf of the United States for the District of Wyoming. Appellant is asking this court to reverse the district court's denial of his motion to suppress, arguing that his stop was unlawfully extended. This was not the case, as I believe the court's already indicated. It's leaning towards because he had not ascertained whether Mr. Dawson had authority to operate the vehicle at the time marijuana was found in the car, thus establishing probable cause to continue the detention. Under Rodriguez, is our authority correct? Can you extend the stop to assure that the driver has a right to operate the rental vehicle? Yes, Your Honor. And I believe that the case law is very clear. And Frazier is in 2022. Not our case law, Supreme Court. I mean, the argument is that our case law is inconsistent with Rodriguez, as I understand the argument. And I believe that argument, Your Honor, is based on a misreading of Rodriguez. Rodriguez holds that when the traffic stop is justified at its inception, that the officer's actions must then be reasonably tied to the mission of the stop. Rodriguez then goes on to define the mission of the stop to include the violation that warranted the stop and attend to related safety concerns. Rodriguez further defines safety concerns to be the objective of the enforcement of the traffic code, ensuring that the vehicles on the road are operated safely and reasonably. And then another step down defines that include that courts, or sorry, troopers, law enforcement have authority to ascertain whether the person is authorized to operate the vehicle. This usually ties into for the most common traffic stop registration, whether the driver has a driver's license. And so the appellant is trying to read into Rodriguez this more, both trying to read in a sequential argument and by saying that, well, you have to do the traffic stop. And then as soon as you are done with the citation for that, it's done. If you didn't complete everything else, then you have to release them because your authority is ended. That misreads Rodriguez. Rodriguez, as cited in Cates in 2023, says that the authority to end or the authority to detain the individual ends when they have fully completed a traffic stop and issued the driver a written warning or citation for it. So what's important there is it is both of them. Just because one has concluded does not mean the authority has ended. It's when both has concluded. So the trooper in this case was trying to do everything he could. As the court has said in Mayfield, the touchstone of the Fourth Amendment is reasonableness, not efficiency. And the trooper in this case was actually trying to be as efficient as possible. At the time, I agree he didn't have much suspicion when you listen to the audio tape and his testimony at the suppression hearing. He was it was a very cordial interaction. He was writing the citation. He finished it. And when he finished it, and it was actually within 12 minutes after the stop is when he finished the citation. And when he finishes it, he says, All right, I'm going to give this to you now. As soon as you get that rental agreement, you're going to be free to go. So he was actually trying to be efficient. And just because he gave that citation, it's just as you were saying, Judge Phillips, he doesn't have to hold on to it or go slower. This would then encourage the precedent that Mr. Dawson is trying to argue for, could even encourage them to go slower. Well, I don't want to finish the citation because I don't know anything else that I'm lawfully allowed to inquire about. So for those reasons, Rodriguez is congruous with the 10th Circuit opinions that have already come out on this. Frazier analyzes Rodriguez. Cates analyzes Rodriguez. And both of those cases hold that a driver's inability to produce a rental agreement may justify continued detention for the purposes of investigating his authority to drive the vehicle. What if the confirmation email was exactly what the officer found? It was the Buick. I think a Buick. I don't know a Buick from a Toyota. But the car he was driving and the return date matched and the location. Everything matched. But he didn't have an actual rental agreement. I mean, I'm a little concerned having just rented a car to get to Laramie. Nobody gave me a rental agreement. I mean, is that really valid to say you have to produce a rental agreement? I think it's nuanced, Your Honor. And I would concede. I don't think it has to be specifically a rental agreement. I think what the trooper is entitled to do, though, is ascertain that they are lawfully entitled to operate the vehicle. But there's numerous ways that could happen. As in the Dunn case, they actually called the rental company. That individual was detained for 30 minutes while they ascertained his driver's license status as well as his authority to operate the rental agreement. And they actually called the rental company and determined he was not, in fact, authorized to continue operating it. It was past due. So I do must concede that there are other ways it can be proved. But what's also important here is when we look at the standard of review, courts must defer to the reasonable inferences made by law enforcement. And I think this is where an important spot where the courts should look to law enforcement and how they can ascertain that. And in this case, what is also important is Mr. Dawson had said his girlfriend had the rental agreement. She can give it to me. So that's why the trooper was waiting for it. He was relying on what Mr. Dawson told him. It seemed like he was going to be getting it. He got the confirmation email. Then there was discussion. No, I need the actual rental agreement. Mr. Dawson's then heard telling his girlfriend he needs the actual rental agreement. OK. Looking, it was an ongoing process. And this had only been a few minutes. It was actually the stop or the ticket was at 10-04. And then by 10-06, the marijuana was found. At 10-05 is when or 10-03, the email was shown or the text message. And I won't go too much into this. But I think it almost is clearly erroneous that the court did find that the trooper did see the whole email when you look at his testimony and you look at the video of the stop. You didn't argue clearly or when you sent your brief to us, did you? I did put a footnote in there. Yeah, I'm not sure if a footnote will do that for you. Either way, it is regardless, Your Honor. As assuming the trooper did see the whole rental agreement or the whole confirmation email, as the court has pointed out, it was for a Mustang Coupe or similar. He was driving a Chrysler 300C. It was for the dates of October 3rd to October 8th. This was on October 12th. It did not have his full name on there, just said for a Jerry. And then it also did not have anything with regards to license plate number, no VIN, and it was not a contract. So in this no way proved Mr. Dawson's lawful authority to be operating the vehicle. Counsel, that goes to the merits of what we're trying to figure out here. That doesn't get us past Rodriguez and what we think the Tenth Circuit is saying in regard to that. Because opposing counsel is arguing that once the ticket was given back to him and the fact that there's the agreements out there that you've got to have reasonable suspicion or you've got to turn him loose. That's what we've got to, you're going down to the point, yeah, if I can get that far, there's not much of a case here. The problem is we've got to be able to get that far. And he's arguing Rodriguez and a couple of our cases say, no, under the new law, you can't go that far. I think I'm paraphrasing basically his argument, but that's where, that's kind of where I'm perceiving this to be. And I would note that is not what was briefed by appellant. And further, Rodriguez came out in 2015. Well, that's very important. Why are you saying you know that that wasn't briefed by counsel? He did not point out in their brief that Mr., that Rodriguez was incongruous with the Tenth Circuit case law that exists. We analyzed Frazier. We talked about Frazier. And in the briefs, there was nothing about saying that Rodriguez was incongruous with the current Tenth Circuit case law. So I believe he may have waived that argument and then getting to the merits of it, even if he did not, as I stated before. Well, let me take you one step back because the court's also asking the question, does not the Tenth Circuit law say that the off without reasonable suspicion, but if you're driving a rental car, the officer has a right to determine you're the person who's authorized to drive that vehicle, has nothing to do with reasonable suspicion. It's your ability and authority to drive. Isn't that the law in the Tenth Circuit? It is, your honor. Now, did Rodriguez change that? No, your honor. How did it? It did not because I believe I touched on this somewhat similar, but both Cates and Frazier both post Rodriguez, both analyze Rodriguez and both then hold in the context specifically of Rodriguez that you are still that troopers are still allowed. It still is the law in the Tenth Circuit that they are allowed to ascertain whether there's lawful authority to drive the vehicle. And as I said before, that is allowed by Rodriguez because you're looking at the mission of the stop. And the mission of the stop includes the related safety concerns and the objectives of enforcement of the traffic code. And then as I've stated, the confirmation email we had here was not sufficient. And so I believe this court must affirm the denial of the motion to suppress. And if the court has no more questions on that issue, I would turn to the sentencing issue briefly. The appellate is asking that the court reverse the denial of the downward departure below a mandatory minimum  apparently that the court should dismiss 5k 2.23 and only rely on 5g 1.3. I believe we got it's important to take a step back here and look at the 5g provision and 5k provision in their titles alone, which 5g is specifically for undischarged terms of imprisonment. 5k is specifically for discharged terms of imprisonment. Counsel, I hate to jump in right there. But this question, I had to write it down. So I make sure I didn't mess it up when I asked the question. So my question is, was the district court required to apply a downward departure pursuant to section 5g 2.23 if defendants in North Dakota charge met the concerns of section 5g 1.3. Does that make sense? I hope it does. I think so. I believe you mean the 5k 2.23. So was the court required to give the downward departure under 5k? No, because first of all, the guidelines are advisory and they are discretionary. And 5k 2.23 is a discretionary policy statement for a downward departure. So it is completely discretionary, even under the verbiage of the guidelines. And then what the defendant is asking is then to ignore 5k 2.23 and do an adjustment under 5g. And because 5g is the only provision that actually, there is no case law in this circuit, but I don't think we could argue that 5g does not have the statutory authority to do so. Every circuit that has analyzed it has agreed so. But what's important is to look at that statute, which gives it that authority. That statute is 18 USC 3584 subsection a, which says that if a term of imprisonment is imposed on a defendant who's already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively. So even the statute, which gives it authorities only for undischarged sentences. I just was like, would you read that again, please? Sorry, I'm looking at my time. So I'm trying to, I won't hold it against you. The others may, but I won't. If a term of imprisonment is imposed on a defendant. I don't know what the section, the statute or what you read from. Much easier. 18 USC section 3584 subsection a. And so if you had a statute that was tied to the guideline, then you would say you have authority in the sentencing court to go below a mandatory minimum. If there was statutory authority, yes. In absence of that, the district court is bound by the statutory minimum is your position. Correct. And I believe it's the 10th circuit's position as has been held in United States, the CD in 2017. Any exception to the statutory directive must also be given by statute. There's other 10th circuit case law that supports that as well. But from the 70 months to the 60 month mandatory minimum, if the district court had said, I don't have any authority under 5k 2.23 to go from 70 to 60, that would be an error, right? Yes, I believe it would be. But that's not what the district court said. And that's not what the district court said. And I'm beating myself up because I have been reminding myself numerous times that the first thing I should say is actually when you look at the standard of review, the district court, even if it did misapply the guidelines, remand is still not appropriate in this case because the record is clear that it did not affect the district court selection of sentencing because it could have gone from the 70 to 60 months. By varying. What's that? By varying instead of departing. Yes, or by departing either way. And so he decided not to very clearly on the record because of the defendant's criminal conduct, his substantial drug history, his possession of two pounds of methamphetamine. The record is replete with reasons why he did not do that. And so the record is very clear that even if he did have the authority to depart downward, he would not have done so. And thus, remand is still not appropriate in this case, regardless of whether he misapplied the guidelines. And for those reasons, this decision should still be affirmed. Let me ask you a question that's unrelated. But just for my general curiosity for cases going forward, does DOJ still have the policy, Attorney General Garland, you charge the most readily provable offense? There is new guidelines with regards to mandatory minimum. Because we have 900 grams of methamphetamine here. And this was before the change in guidelines. But there has been a change in policy with regards to mandatory minimums that we should not always be charging. We do have to get permission to charge mandatory minimums. I think there is a progressive stance towards those mandatory minimums. The defendant got a big break when you reduced the charge. He did. All right. Any other questions? Okay. Thank you, counsel. So you heard the government say that the officer did not have much suspicion about unlawful operation of the car. I think we can safely say there's the officer did not have reasonable suspicion that Mr. Dawson was not officially operating the car. And I'd like to read to you another key passage from Rodriguez. An officer may conduct certain unrelated checks during an otherwise lawful traffic stop, but he may not do so in a way that prolongs the stop absent reasonable suspicion ordinarily amended to justify the date. An instance of that would be the officer waits until he's issued the citation to even contact dispatch. For example, and here, for example, as the government pointed out, you could call the rental company as the government, the officers acknowledged at the hearing they could have done, but did not. The notion that I'm going to continue to detain you even after issuing the citation until I have received an actual rental agreement, I would say is not reasonable in that context. Just one word about the sentencing, if I may. The briefing, I regret, has produced confusion. I don't think we disagree with the government about below 60 months. The point is going from 70 to 60. And the district court's entire discussion of 5K and 5G is that analysis that I don't have authority because in light of the fact that 5G is tied to the statute. But the district court knew it could vary and it didn't. It's not clear to me that it knew that it could apply 5K in that way. Well, I'm not talking 5K. I'm talking about 3553A and variances as opposed to departures. The court knew it could go to 60 if it wanted to. Yeah, it knew it could go to 60. I don't think that it understood that it had the authority to do that on the basis of the North Dakota case, which is what we asked for. Thank you, counsel. Well, let me, I'm trying to understand this. I'm sorry. So if the court knew that it could vary from 70 to 60 under the 3553 factors and chose not to do it, what difference does it make if it was confused about its ability to vary from 70 to 60 on some other basis? Well, everything in sentencing is so much about the explanation and the reasons for doing it. This is a defendant who had served 361 days on a related charge. That is a ground knowing that I have the authority to take an action based on that specific ground as opposed to the holistic assessment of 3553A is a different story, I think. But either one of them would have been discretionary. I agree. 5K is discretionary. Okay. Thank you. Thank you, counsel, for your helpful arguments. The case is submitted. Counsel are excused.